**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **In re:** | § | |
| **JONATHAN DAVID GASPARD &** | § | |
| **LAURA OGLESBY GASPARD** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **SUNEEL MENON** | § | **CASE NO.  25-44602** |
| *Plaintiff,* | § | |
| | § | **ADV. PRO. NO. <u>26-04015</u>** |
| **vs.** | § | |
| **JONATHAN DAVID GASPARD** | § | **JUDGE MARK X. MULLIN** |
| | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**UNDER SECTIONS 523(a)(2)(A) and 523(a)(6)**

---

Plaintiff Suneel Menon ("Plaintiff") files this First Amended Complaint against Defendant

Jonathan David Gaspard ("Defendant") and would respectfully show:

### I.      JURISDICTION AND VENUE

1.  This is an adversary proceeding arising under 11 U.S.C. §§ 523(a)(4) and 523(a)(6).

2.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

3.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

4.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  This Complaint is timely filed pursuant to Fed. R. Bankr. P. 4007(c).

### II. PARTIES

6.  Plaintiff is an individual and creditor of Defendant.

7.  Defendant is the debtor in the above-captioned Chapter 7 case.

### III. FACTUAL BACKGROUND

**A. The Company and the Members' Management Structure**

8. Plaintiff and Defendant were co-managing members of Gaspard and Menon, a Texas limited liability company (the "Company").

9. Effective June 1, 2022, Plaintiff and Defendant executed the Company's Second Amended Company Agreement (the "Company Agreement").

10. Under the Company Agreement, material management decisions required unanimous consent of the members, including decisions relating to leases, contracts, movement of operations, access to bank accounts, hiring management-level personnel, borrowing, guarantees, pledges of assets, and engagement of attorneys or accountants.

11. The Company Agreement also granted members contractual rights to access the Company's books, records, bank accounts, and financial information.

12. Effective June 5, 2023, a third member, Gurneer Kher, was admitted as a five percent (5.0%) member, reducing Plaintiff's and Defendant's respective interests to 47.5% each.

**B. Plaintiff's Capital Contributions, Loans, and Personal Financial Exposure**

13. In or around June 2022, Plaintiff made a capital contribution to the Company in the amount of approximately $500,000.

14. Thereafter, Plaintiff loaned approximately $1,700,000 to the Company in multiple loan transactions.

15. Plaintiff also facilitated additional loans to the Company from affiliated entities and persons.

16. Defendant knew of Plaintiff's capital contributions, loans, and continuing financial support of the Company.

17. Plaintiff did not merely invest in or loan funds to the Company. Plaintiff also became personally exposed on Company obligations through personal guarantees and pledged collateral.

18. Plaintiff personally guaranteed, among other obligations, a loan from Texas Heritage National Bank in the approximate amount of $1,100,000.

19. Plaintiff also personally guaranteed obligations owed by or incurred for the benefit of the Company to Blue Elephant, West Bend Mutual Insurance Company, Gulfside Supply, Inc., and Libertas Funding, LLC, in amounts to be proven at trial.

20. In addition, Plaintiff pledged two parcels of real property owned individually by Plaintiff, with an approximate aggregate value of $1,300,000, as collateral in favor of HARCO National Insurance Company in connection with bonding and/or related Company obligations.

21. Defendant knew that Plaintiff had personally guaranteed Company obligations and had pledged personally owned real property as collateral for Company-related indebtedness and bonding exposure.

22. All of the foregoing creditors or obligees—Texas Heritage National Bank, HARCO National Insurance Company, Blue Elephant, West Bend Mutual Insurance Company, Gulfside Supply, Inc., and Libertas Funding, LLC—have filed lawsuits naming both the Company and Plaintiff individually as defendants, thereby rendering Plaintiff's personal exposure actual and concrete rather than speculative.

**C.** **The June 24, 2024 Amendment Confirmed Plaintiff's Financial-Control Rights and Reimbursement Expectations**

23. Effective June 24, 2024, the members executed a First Amendment to Second Amended Company Agreement (the "June 2024 Amendment").

24. In the June 2024 Amendment, Defendant expressly agreed that, from and after the effective date, Plaintiff would head the Company's accounting and finance matters.

25. The June 2024 Amendment granted Plaintiff management authority with respect to, among other things:

a. borrowing money or incurring debt by the Company and the terms of same;

b. personal guarantees of or security for Company debt, including pledges of assets, grants of security interests, liens, and other encumbrances;

c. repayment or refinancing of Company debt;

d. making investments in or loans to any person or entity;

e. management and oversight of the Company's capital investments;

f. management and oversight of the Company's books, records, and accounting function;

g. management and oversight of the Company's finances, including cash management, financial reporting, control, tax, and compliance;

h. approval of all payments and disbursements of Company funds;

i. management and oversight of the Company's accounting team;

j. approval of and interaction with the Company's independent certified public accountants; and

k. taking action, authorizing, approving, or entering into binding agreements concerning the foregoing accounting and finance matters.

26. The June 2024 Amendment also required that Plaintiff be added as a signatory on all Company bank accounts.

27. The June 2024 Amendment further contained a contribution and reimbursement arrangement under which the members expressly recognized personal liability and exposure associated with Company indebtedness that was personally guaranteed or otherwise secured by one or both members or their respective assets.

28. More specifically, the June 2024 Amendment provided, among other things, for reimbursement between members where a member made payment on guaranteed indebtedness or where a member's personal assets or properties were foreclosed upon, sold, taken, transferred, or otherwise disposed of to satisfy such indebtedness.

29. The June 2024 Amendment further stated that each member "unconditionally, absolutely, and irrevocably" guaranteed and promised to reimburse and pay contribution amounts due under that section, purportedly surviving sale, merger, windup, liquidation, termination, and bankruptcy to the fullest extent permitted by applicable law.

30. Whether or not every aspect of the reimbursement language is ultimately enforceable in the full scope asserted by Plaintiff, the June 2024 Amendment reflects Defendant's express knowledge that Plaintiff was continuing to expose himself personally through loans, guarantees, pledged collateral, and other financial support for the Company, and that Plaintiff could sustain direct personal loss if the Company's finances were mismanaged or Company obligations went unpaid.

**D. Defendant's Wrongful Seizure of Financial Control and Exclusion of Plaintiff**

31. Beginning in or before October 2024, and despite the Company Agreement and June 2024 Amendment, Defendant engaged in a deliberate and unauthorized seizure of control over the Company and its finances.

32. Over the weekend of October 12–13, 2024, Defendant secretly moved the Company's property, books, records, files, equipment, and operations out of office space provided by Plaintiff to new office space procured by Defendant without the consent or authorization of Plaintiff or the other member.

33. Defendant entered into an undisclosed and unauthorized lease agreement or license on behalf of the Company in connection with that move.

34. Defendant moved, misappropriated, and wholly deprived Plaintiff of access to Company property, equipment, books, records, and assets.

35. Defendant failed and refused to add Plaintiff as a signatory to the Company's bank accounts despite the June 2024 Amendment requiring that Plaintiff be added as a signatory.

36. Defendant blocked Plaintiff's access to the Company's bank accounts, including accounts at Texas Heritage National Bank, Chase Bank, and Texas Security Bank.

37. Defendant cut off Plaintiff's access to the Company's books, records, and financial information.

38. Defendant hired an individual identified as Jeremy Pinckney as a purported "fractional CFO," without required authorization, to take over accounting and finance functions that had been contractually assigned to Plaintiff.

39. Defendant took the foregoing actions knowingly, intentionally, and in direct contravention of the Company Agreement and the June 2024 Amendment that Defendant had signed.

**E.  Defendant's Misappropriation, Diversion, and Unauthorized Charges**

40. Defendant caused Company funds to be used for purposes unrelated to legitimate Company operations.

41. Defendant used Company funds to acquire and operate at least two residential rental properties held in Defendant's name and/or the name of Defendant's affiliated entities.

42. Defendant made unauthorized credit card transactions totaling approximately $37,064.50 on Plaintiff's personal Apple credit card to pay a Company supplier.

43. Defendant also caused approximately $1,500 in FedEx transactions to be charged without authorization on Plaintiff's personal Apple credit card.

44. Defendant engaged in additional unauthorized charges, disbursements, and financial commitments without the required member consent and without Plaintiff's required approval under the June 2024 Amendment.

45. Defendant concealed these actions from Plaintiff.

46. Defendant's concealment included withholding crucial financial information, failing to disclose material Company-related business decisions and developments, and refusing to provide books and records needed to ascertain the full nature and extent of the misuse, diversion, liabilities, and resulting damages.

**F.  Demand, Continued Concealment, and Escalating Harm**

47. On or about October 21, 2024, Plaintiff served Defendant with a written demand to cease and desist from and correct the foregoing violations.

48. Defendant disregarded and failed to respond to that demand.

49. On or about December 31, 2024, Plaintiff and the other member served Defendant with a written notice of special meeting regarding Defendant's wrongful acts and omissions.

50. A special meeting was held on January 13, 2025. Although timely noticed, Defendant did not attend.

51. The attending members voted unanimously in favor of corrective measures addressing Defendant's unauthorized conduct.

52. Defendant disregarded those directives and continued his misconduct.

**G. Direct Personal Harm to Plaintiff and Resulting Debt**

53. Defendant's conduct did not merely harm the Company in the abstract. Defendant's conduct directly and proximately caused, increased, and accelerated Plaintiff's personal liability and personal financial loss.

54. Defendant knew that Plaintiff had made substantial loans to the Company, had personally guaranteed multiple Company obligations, and had pledged personally owned real property as collateral in support of Company obligations.

55. Defendant also knew that Plaintiff had been contractually granted authority over borrowing, guarantees, repayment, disbursements, books and records, and signatory authority over bank accounts.

56. By excluding Plaintiff from the finances, blocking access to accounts, refusing signatory access, concealing material financial information, misusing funds, and incurring unauthorized obligations, Defendant prevented Plaintiff from protecting himself and the Company from default, loss, and escalating liability.

57. As a direct and proximate result of Defendant's conduct, Company obligations went unpaid or into default, creditors pursued claims against Plaintiff personally, and Plaintiff's pledged real property and other personal assets were placed at risk.

58. As a direct and proximate result of Defendant's conduct, Plaintiff has been named individually as a defendant in lawsuits filed by Texas Heritage National Bank, HARCO National Insurance Company, Blue Elephant, West Bend Mutual Insurance Company, Gulfside Supply, Inc., and Libertas Funding, LLC.

59. As a further direct result of Defendant's conduct, Plaintiff became personally liable for and/or suffered loss with respect to unauthorized Apple credit card charges totaling approximately \$38,564.50.

60. The debt owed by Defendant to Plaintiff includes, without limitation:

a. amounts Defendant is obligated to reimburse Plaintiff under applicable agreements and law arising from guaranteed indebtedness, pledged collateral, and contribution/reimbursement obligations;

b. amounts Plaintiff has paid or will be compelled to pay on Company obligations as a result of Defendant's wrongful conduct;

c. the unauthorized charges on Plaintiff's personal Apple credit card, including the approximately \$37,064.50 supplier charges and approximately \$1,500 in FedEx charges;

d. additional diverted, misappropriated, or unauthorized amounts to be proven at trial;

e. accrued contractual or statutory interest; and

f. attorneys' fees and costs where recoverable under applicable agreements or law.

**IV. COUNT I EMBEZZLEMENT UNDER 11 U.S.C. § 523(a)(4)**

61. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

62. Defendant lawfully possessed and exercised control over Company funds, assets, and financial channels by virtue of his managerial position and actual control over the Company's operations, accounts, and disbursements.

63. Defendant appropriated such funds and assets for uses other than those for which they were entrusted.

64. Such appropriations included, without limitation:

a. using Company funds for purposes unrelated to legitimate Company operations;

b. using Company funds to acquire and operate residential rental properties held in Defendant's name and/or affiliated entities;

c. causing unauthorized disbursements and charges; and

d. causing unauthorized charges to be placed on Plaintiff's personal Apple credit card for Company-related expenses.

65. Defendant acted with fraudulent intent.

66. Defendant's fraudulent intent is shown by, among other things, his secret relocation of Company property and operations, exclusion of Plaintiff from bank accounts and records, refusal to comply with the June 2024 Amendment, concealment of financial information, disregard of written demand and member directives, and personal or affiliated benefit from the diverted funds.

67. The debt arising from Defendant's embezzlement is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## V. COUNT II – FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY UNDER 11 U.S.C. § 523(a)(4)

68. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

69. At all relevant times, Defendant occupied a position of trust and exercised control over specifically identifiable funds, accounts, financial records, and other property with

respect to which Plaintiff had contractual rights, approval rights, inspection rights, and direct personal financial exposure.

70. Through the Company Agreement, the June 2024 Amendment, and the parties' contribution/reimbursement structure for guaranteed indebtedness and pledged collateral, Defendant undertook and acknowledged duties concerning Plaintiff's direct financial interests, not merely generalized duties to the Company.

71. Defendant knowingly violated those duties by, among other things:

a.  seizing control of Company finances in derogation of Plaintiff's contractual financial authority;

b.  blocking Plaintiff's access to bank accounts and refusing to add Plaintiff as a signatory;

c.  withholding books, records, and financial information;

d.  incurring unauthorized obligations and disbursements;

e.  diverting and misusing funds;

f.  exposing Plaintiff to increased guaranty and collateral liability; and

g.  concealing the foregoing acts.

72. Defendant's conduct constituted, at minimum, a conscious disregard of his duties and a gross deviation from standards of conduct that Defendant knew Plaintiff was entitled to expect, particularly in light of Plaintiff's personal guarantees, pledged collateral, and financial-control rights under the June 2024 Amendment.

73. The resulting debt owed by Defendant to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

**VI. COUNT III – WILLFUL AND MALICIOUS INJURY UNDER 11 U.S.C. § 523(A)(6)**

74. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

75. Defendant intentionally seized and excluded Plaintiff from Company operations, Company finances, Company bank accounts, and Company records.

76. Defendant intentionally diverted funds, concealed financial information, and incurred or caused unauthorized obligations and disbursements.

77. Defendant knew that Plaintiff had personally guaranteed Company obligations, had pledged personally owned real property as collateral, had made large loans to the Company, and had been granted direct contractual authority over Company financial matters.

78. Defendant knew with substantial certainty that excluding Plaintiff from the Company's finances, preventing Plaintiff from monitoring and controlling borrowing and disbursements, diverting funds, and concealing financial information would cause financial injury to Plaintiff personally.

79. Defendant nevertheless acted deliberately and without just cause or excuse.

80. Defendant's conduct was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

81. The debt arising from such conduct is nondischargeable.

**VII. DAMAGES**

82. The debt owed by Defendant to Plaintiff includes, but is not limited to:

a. unauthorized Apple credit card charges, currently alleged at approximately $38,564.50;

b. amounts for which Plaintiff is personally liable, or has paid or will pay, as a result of Defendant's wrongful conduct in connection with guaranteed Company indebtedness and pledged collateral;

c.   contribution and reimbursement amounts due under applicable agreements and law;

d.   additional diverted or misappropriated amounts to be proven at trial;

e.   pre-judgment and post-judgment interest;

f.   attorneys' fees and costs where recoverable; and

g.   such other damages or relief as may be shown at trial.

## VII. PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court:

1.   Determine that Defendant's debt to Plaintiff is nondischargeable under 11 U.S.C. §§ 523(a)(4) and 523(a)(6);

2.   Enter judgment in favor of Plaintiff and against Defendant in an amount to be proven at trial, including without limitation:

a.   unauthorized Apple credit card charges;

b.   reimbursement, contribution, guaranty, collateral, and related amounts for which

Defendant is liable to Plaintiff;

c.   additional misappropriated or diverted funds proven at trial;

d.   pre-judgment and post-judgment interest;

e.   attorneys' fees and costs where recoverable; and

3.   Grant Plaintiff all such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

By: /s/ Alvin Q. Malone
Alvin Q. Malone SBOT # 24085446
Law Offices of Al Malone
3100 W. Southlake Blvd., Ste 110
Southlake, TX 76244
T: 817-953-3112

al@maloneattorney.com

Attorney for Plaintiff